**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com
Fax: 702 258-8787

and

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

U.S. Bank, N.A., it's Successors and/or Assigns
09-71886 / 7810236298

Electronically Filed on _____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>Alberto   Ayala and Maria D. Ayala<br><br><br><br>           Debtor(s). | BK-S-08-19261-bam<br><br>Date: 4/21/09<br>Time: 1:30pm<br><br>Chapter 13 |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

U.S. Bank, N.A., it's Successors and/or Assigns, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1. That on or about August 18, 2008, the above named Debtors filed their current Chapter 13 Petition in Bankruptcy with the Court.

2. Secured Creditor is the current payee of a promissory note dated in the principal sum of $131,435.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 4111 Bewitched Court, Las Vegas, NV 89115, and legally described as follows:

> Lot Seventeen (17) in Block One (1) of LINCOIM VISTA HOME SITES, as shown by map thereof on file in Book 76 of Plats, page 55, in the Office of the County Recorder of Clark County, Nevada.
>
> Reserving therefrom and granting thereto an easement for ingress/egress, use and enjoyment over that portion of said Lot delineated as "Private Drive" and "P.U.E." as shown on map of said subdivision.

("subject property" herein).

3. Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

4. With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $121,240.89 |
| 3 Monthly Payments at $1,084.15 (January 1, 2009 – March 1, 2009) | $3,254.45 |
| 3 Late Charges at $ 43.37 each (January 16, 2009- March 1, 2009) | $ 130.11 |
| Motion Filing Fee | $150.00 |
| Attorneys Fees | $750.00 |
| Total Arrearages | $4,284.56 |

Furthermore, a payment becomes due on April 1, 2009 and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

5. Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. The fair market value of the property pursuant to Debtor's Schedule "A" is $135,000.00, less ten percent (10%) cost of marketing, less the first secured lien resulting

1  in insufficient equity. Therefore, secured creditor is not adequately protected. A true and correct copy of
2  the Debtor's Schedule "A" is attached hereto as Exhibit "A".

3        6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with
4  respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish
5  the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

6        7.    Secured Creditor has incurred to date attorney's fees of approximately $750.00.

7        8.    Secured Creditor urges that this Court issue and Order herein permitting this Secured
8  Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain
9  possession of the Property.

10       9.    Secured Creditor's Information Sheet as to the extent of liens and encumbrances against
11 the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured
12 Creditor will seek leave of Court to specify any further encumbrances against the subject property at
13 the time of hearing.

14       10.    Rick A. Yarnall has been appointed by this Court the Chapter 13 Trustee in this instant
15 Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor
16 holds title to the subject property in that capacity. To the extent the relief sought herein is granted,
17 Respondent, Rick A. Yarnall, Trustee, is bound any such judgment.

18       11.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section
19 362(d).

20       12.    Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning
21 the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying
22 other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a
23 foreclosure proceeding if and when one is initiated.

24       WHEREFORE, Secured Creditor prays judgment as follows:

25       (1)    For an order granting relief from the Automatic Stay, and permitting this Secured
26 Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to

sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)     For a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order for relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED  3/26/09  .

                        **WILDE & ASSOCIATES**

By  /S/GREGORY L. WILDE
                 GREGORY L. WILDE, ESQ.
                 Attorney for Secured Creditor
                 208 South Jones Boulevard
                 Las Vegas, Nevada 89107

200208 08
00595

16    APN: 140 19 713 017

~~Mail Tax Statements and~~
WHEN RECORDED MAIL TO:

INTERNATIONAL HOME CAPITAL CORP.
P.O. BOX 451
KILA, MONTANA 59920
A.P.N. #: 140-19-713-017



MAIL TAX STATEMENTS TO: U.S. BANK
N.A., P.O. BOX 20005, OWENSBORO,
KY 42304-0005

cac 6/3(0-25    ──────── [Space Above This Line For Recording Data] ────────

# DEED OF TRUST

| FHA CASE NO.      |
|-------------------|
| 332-3935205-706   |

Loan Number: 20622273

THIS DEED OF TRUST ("Security Instrument") is made on  AUGUST 1, 2002
The grantor is MARIA D. AYALA AND ALBERTO AYALA, WIFE AND HUSBAND

("Borrower").

The trustee is LAWYERS TITLE OF NEVADA

("Trustee").

The beneficiary is INTERNATIONAL HOME CAPITAL CORP., A NEVADA CORPORATION

which is organized and existing under the laws of   NEVADA
and whose address is  823 S. 3RD STREET, SUITE A, LAS VEGAS, NEVADA 89101

("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED THIRTY ONE THOUSAND FOUR HUNDRED THIRTY FIVE AND 00/100**********
Dollars (U.S. $ 131,435.00         ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   SEPTEMBER 1, 2032         . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
                                             CLARK                                             County, Nevada:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which has the address of  4111 BEWITCHED COURT, LAS VEGAS
                                    [Street]                                      [City]

Nevada        89115           ("Property Address"):
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

NEVADA-FHA DEED OF TRUST (6/96)
Document Systems, Inc. (800) 649-1362        Page 1 of 5

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which

are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within     60 DAYS     from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to     60 DAYS     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentences shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debts secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

21. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S.
S

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider         ☐ Growing Equity Rider

☐ Planned Unit Development Rider    ☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 5 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Maria D. Ayala_ (Seal)  
MARIA D. AYALA -Borrower

_Alberto Ayala_ (Seal)  
ALBERTO AYALA -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

Witness:                                   Witness:

_____                _____

STATE OF NEVADA,    ~~CLARK~~ Nye    County ss:

On this 1st day of August 2002, personally appeared before me, the undersigned, a notary public in and for the County and State aforesaid,
MARIA D. AYALA, ALBERTO AYALA

known to me to be the person described in and who executed the within and foregoing instrument, and who acknowledged to me that  they   executed the same freely and voluntarily and for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county of Nye, the day and year in this Certificate first above written.

My Commission expires: 8/9/03

_Pamela Christie_  
Notary Public



PAMELA CHRISTIE  
Notary Public - Nevada  
No. 99-57906-14  
My appt. exp. Aug. 9, 2003

20020808
00595

ORDER NO.: 02061200

## EXHIBIT A

### (LEGAL)

Lot Seventeen (17) in Block One (1) of LINCOLN VISTA HOME SITES, as shown by map thereof on file in Book 76 of Plats, page 55, in the Office of the County Recorder of Clark County, Nevada.

Reserving therefrom and granting thereto an easement for ingress/egress, use and enjoyment over that portion of said Lot delineated as "Private Drive" and "P.U.E." as shown on map of said subdivision.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF: LAWYERS TITLE OF NEVADA

08-08-2002    09:00    ARO    PAGE COUNT: 6

OFFICIAL RECORDS

BOOK/INSTR: 20020808-00595    FEE:    19.00
                              RPTT:    .00



ASSESSORS PARCEL #: 140-19-713-017

WHEN RECORDED, MAIL TO:
INTERNATIONAL HOME CAPITAL
CORP.
P.O. BOX 451
KILA, MONTANA 59920

INSTRUMENT PREPARED BY:
MAIL TAX STATEMENTS TO: U.S.
BANK N.A., P.O. BOX 20005,
OWENSBORO, KY 42304-0005

Order No. 02061200
Escrow No. 02061200
Loan No. 20622273



——— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
U.S. BANK N.A., a national corporation under the laws of United States
SUCCESSORS AND/OR ASSIGNS, 4801 FREDERICA STREET, OWENSBORO, KY 42301
all beneficial interest under that certain Deed of Trust dated    AUGUST 1, 2002    executed by
MARIA D. AYALA AND ALBERTO AYALA, WIFE AND HUSBAND

, Trustor,
to LAWYERS TITLE OF NEVADA , Trustee,
and recorded as Instrument No. Concurrent on             in book         , page
, of Official Records in the County Recorder's office of CLARK          County,
NEVADA                 , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

NEVADA CORPORATION ASSIGNMENT OF DEED OF TRUST
Page 1 of 2

DocMagic eForms 800-649-1362
www.docmagic.com





| STATE OF NEVADA | SS. |
|---|---|
| COUNTY OF CLARK | |

On August 1, 2002 before me,

personally appeared

Toni Nichoras

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature Mike Virissimo

OFFICIAL SEAL
MIKE VIRISSIMO
NOTARY PUBLIC - STATE OF NEVADA
CLARK COUNTY
99-57967

(This area for official notarial seal)

INTERNATIONAL HOME CAPITAL CORP., A NEVADA CORPORATION

_____
TONI NICHOLAS
ASSISTANT CORPORATE SECRETARY

NEVADA CORPORATION ASSIGNMENT OF DEED OF TRUST
Page 2 of 2

DocMagic eForms 800-649-1362
www.docmagic.com

20020808
.00596

ORDER NO.: 02061200

### EXHIBIT A

(LEGAL)

Lot Seventeen (17) in Block One (1) of LINCOLN VISTA HOME SITES, as shown by map thereof on file in Book 76 of Plats, page 55, in the Office of the County Recorder of Clark County, Nevada.

Reserving therefrom and granting thereto an easement for ingress/egress, use and enjoyment over that portion of said Lot delineated as "Private Drive" and "P.U.E." as shown on map of said subdivision.

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF: LAWYERS TITLE OF NEVADA

06-03-2002   09:00      ARO      PAGE COUNT:    3

OFFICIAL RECORDS

BOOK/INSTR:20020808-00596           FEE:    16.00
                                    RPTT:     .00

B6A (Official Form 6A) (12/07)

In re    **Alberto Ayala,**                                                         Case No. _____
         **Maria D Ayala**
                                                                              Debtors

# SCHEDULE A - REAL PROPERTY

    Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

    Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

    If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single Family Home**<br>**4111 Bewitched Court**<br>**Las Vegas, NV 89115** | **Joint tenant** | **J** | 135,000.00 | 122,223.00 |

|  |  |  |
|---|---|---|
|  | Sub-Total >     **135,000.00** | (Total of this page) |
|  | Total >     **135,000.00** |  |

  **0**   continuation sheets attached to the Schedule of Real Property
                                                                             (Report also on Summary of Schedules)

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                             Best Case Bankruptcy



EXHIBIT A

## ** SECTION 362 INFORMATION SHEET **

Alberto Ayala and Maria Ayala  
DEBTOR(S)

Chapter 13

Case No.: 08-19261-bam

U.S. Bank, N.A., it's Successors and/or Assigns  
MOVANT

PROPERTY INVOLVED IN THIS MOTION: 4111 Bewitched Court, Las Vegas NV 89115

NOTICE SERVED ON: Debtor(s) ____x_____ ; Debtor (s) Counsel _____x_____ ; Trustee _____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st U.S. Bank, N.A., it's Successors and/or Assigns $121,240.89 (PB)  2nd IRS- UNKNOWN  Total Encumbrances: $121,240.89  APPRAISAL or OPINION as to VALUE: or "Per attached Schedule "A" $135,000.00 | 1st _____  2nd _____  Total Encumbrances: $_____  APPRAISAL or OPINION as to VALUE: |
| **TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR**  Amount of Note: $131,435.00  Interest Rate: 7.0  Duration: 30 Year  Payment Per Month: $ 1,084.15  Date of Default: January 1, 2009  Amount of Arrearages: $4,284.56  Date of Notice of Default: March 23, 2009  SPECIAL CIRCUMSTANCES: I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.  SUBMITTED BY: _____  SIGNATURE: /S/GREGORY L. WILDE | **OFFER OF "ADEQUATE PROTECTION" FOR MOVANT:**  SPECIAL CIRCUMSTANCES:  SUBMITTED BY: _____  SIGNATURE: _____ |

EXHIBIT